```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURA KLEMME,

                    Plaintiff,              DECISION
        v.                                   and ORDER

WEST IRONDEQUOIT CENTRAL SCHOOL DISTRICT,    12-CV-6208

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff Laura Klemme, ("plaintiff" or "Klemme"), a former teacher employed by the defendant West Irondequoit Central School District ("defendant" or "WICSD"), brings this action pursuant to the Americans with Disabilities Act of 1990 (the "ADA") claiming that the defendant discriminated against her on the basis of a disability by denying her tenure and forcing her to resign her position. Specifically, plaintiff claims that she was forced to resign after she was denied reasonable accommodations for her known disability in violation of the ADA.

Defendant denies plaintiff's claims and moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment against the plaintiff. Defendant contends that because it had no knowledge of her disability, and did not perceive her as disabled, she cannot establish a prima facie case of discrimination under the ADA. Defendant also contends that even if plaintiff had

made a prima facie case of disability discrimination, plaintiff was denied tenure for non-pretextual, performance-related reasons.

For the reasons set forth below, I grant defendant's motion for summary judgment and dismiss the complaint.

## BACKGROUND

The following facts are taken from the plaintiff's complaint, the deposition testimony of plaintiff and relevant WICSD personnel, defendant's Local Rule 56(a) Statement of Facts, and the Court's review of the entire record.

Plaintiff, an WICSD English teacher at Dake Junior High School ("Dake") from 2008 to 2011, suffers from "trigeminal neuralgia" ("TN"), a condition which she alleges significantly impairs her ability to work and to care for herself. Although plaintiff was absent from work several times during her three-year employment with WICSD, it is undisputed that she was not diagnosed with TN until late spring 2011.

During plaintiff's first year at Dake, 2008-2009, her supervisors were pleased with her performance, and Dake principal Tim Terranova ("Terranova") issued a letter in which he commended her communication skills. By plaintiff's second year however, several issues with her performance began to develop. Plaintiff was absent from work several days in December 2009 and May 2010 for unspecified medical reasons, or "due to illness." Her supervisors were concerned about, among other things, her failure to adequately

communicate with the school and her colleagues regarding these absences. On at least one occasion, plaintiff did not provide an emergency lesson plan for an unexpected absence, a procedure which was required to be followed by all teachers. She also had difficulty completing assignments and being prepared.

In May 2010, Terranova rebuked plaintiff for failing to complete assignments during a December 2009 hospitalization for unspecified reasons, and she was forced to complete several hours of missed work. During her May 2010 evaluation conference, Terranova questioned plaintiff's teaching skills and advised her that "her tenure was in question." Plaintiff's performance-related issues continued into her third year at Dake Junior High School. Throughout the 2010-2011 year, Terranova and plaintiff's curriculum supervisor Vicki Derue ("Derue") were critical of her classroom performance and communication skills, and they conducted several announced and unannounced classroom observations. Plaintiff was also required to forward all of her lesson plans and handouts to a colleague for oversight.

Plaintiff injured her shoulder in December 2010 and requested an extension of her deadline to report test scores to accommodate her daily physical therapy sessions. The request was denied, and plaintiff did not ultimately attend physical therapy. On another occasion, when required to report data collected from students performing a specific task, plaintiff falsely stated that two

students had been absent from school on the day she conducted the assignment. In December 2010, plaintiff began requesting periodic classroom breaks for taking pain medication and using the bathroom. Her requests were granted, but no one relieved her in the classroom.

That year, plaintiff frequently criticized for: being "disorganized and dependent"; lacking emotional maturity and adequate decision making skills, inappropriately communicating with teachers and students; being reactive to feedback; and having pacing problems in the classroom. She received a negative performance review and negative performance critiques throughout the year. In January 2011, plaintiff's supervisors felt that a recommendation for tenure was "in jeopardy," and they placed her on "an improvement plan."

The improvement plan ended when plaintiff's supervisors, Vicki Derue and Matt Schrage, and Tim Terranova decided, based on her inadequate performance, that she would not be recommended for tenure. Plaintiff was first advised of this decision on March 29, 2011 at 3:00 P.M., and she was formally notified on March 31, 2011.

Plaintiff claims that her discriminatory treatment started with the onset of her TN symptoms in January 2011, when she went to an emergency room for an ear infection. A diagnosis of TN was not made, however, until later that spring in 2011. Plaintiff testified that she informed Vicki Derue about her condition, but she admitted

that neither she nor WICSD was aware that she suffered from TN during the period in which the alleged discrimination had occurred:

> "Q. When were you first diagnosed with trigeminal neuralgia?
>
> A. I don't know...Well, it started exactly on January 10[, 2011], when I was in the emergency room and it took quite a long time for them to figure out what it was. The actual diagnosis was sometime following that spring.
>
> ...
>
> Q. And you don't remember when?
>
> A. No.
>
> ...
>
> Q. Did you ever tell anyone at the district that you were diagnosed with [TN]?
>
> A. I don't remember. Yes, at some point.
>
> Q. Do you remember who?
>
> A. No. In fact, wait, okay. I told Vicki Derue for sure.
> ...
>
> Q. Would that have been before or after you learned that you were not going to be recommend[ed] for tenure?
>
> A. I don't recall.
>
> ...
>
> Q. You filed a federal court complaint alleging...that [WICSD] discriminated against you based on a disability, right?
>
> A. Right.
>
> Q. What disabilities?

      A.   Oh, [TN]. But at the time I did not know that that's what it was. Neither did they.

      Q.   Any other disability?

      A.   No."

Plaintiff's deposition, pp. 30-31, 39.

Matt Schrage ("Schrage") replaced Terranova as principal of Dake in January 2011 and granted plaintiff's request for flexible work hours and extended deadlines. Despite testifying that she felt "a backlash . . . from the administration" as a result of those requests, plaintiff agreed, however, that it was not "because of [her] condition" that Terranova had first questioned whether she would be recommended for tenure in December 2010.

Plaintiff testified that she met with Vice Principal Dennis Desrosiers ("Desrosiers") in January 2011 and "outlined her concerns about being discriminated against for illness." She did not mention TN to Desrosiers at any time, and he disputes that any allegations of discrimination, disability or otherwise, were raised. It is undisputed that plaintiff was advised and counseled about performance-related issues on several occasions over the course of her three-year employment with WICSD. Plaintiff alleges, however, that criticisms of her performance were a pretext for discrimination against her based on her TN. Plaintiff does not state that her illness interfered with her ability to perform in the classroom or communicate with parents, students, and colleagues.

Moreover, plaintiff does not allege that she requested, or was denied, reasonable accommodations related to TN specifically. In fact, each instance listed in the complaint when plaintiff was ill, absent from work, or hospitalized were unrelated to TN. Plaintiff refers to being absent from work due only to "illness," "medical reasons," an unspecified "hospitalization," a "shoulder injury," and "an outer ear infection," but does not assert that these instances were related to her TN.

Vicki Derue testified that plaintiff was denied tenure because she failed to demonstrate improvement after she was placed on the plan for her improvement, particularly with respect to her relationships with colleagues and her classroom performance. It was clear at that time that plaintiff's tenure was "in jeopardy." Derue denied that plaintiff's medical issues or absences from work were a factor in the denial of her tenure. Derue was not aware that plaintiff suffered from TN, or any other disability, until after the decision had been made.

Timothy Terranova similarly testified that plaintiff was denied tenure because she had made no improvement "in areas such as decision making, communication skills, and overall executive functioning." Although plaintiff had made some improvement, it was not to the level necessary for Terranova to recommend her for tenure.

Terranova noted that, as early as her initial interview for the teaching position in WICSD, a concern regarding plaintiff's communication skills was raised in a response reference from another school district. However, WICSD nonetheless decided to give her a probationary position based on her other strengths. Plaintiff never advised Terranova that she suffered from TN, and she did not raise any claim of discrimination until shortly after Terranova verbally informed her that she would not be recommended for tenure. Even then, plaintiff did not identify or reveal any medical reasons as the basis for her discrimination claim.

Matt Schrage testified that he addressed concerns about plaintiff's work performance with her on several occasions. In a letter dated March 31, 2011, Schrage formally notified plaintiff that she would not be recommended for tenure. Schrage, unaware that plaintiff suffered from TN, or any other disability, testified:

> "Q. I believe you testified to this before, but just to make the record clear, at any point in time before March 31. 2011, when [plaintiff] was formally denied tenure, were you aware that she suffered from a condition called trigeminal neuralgia?
>
>    ...
>
> A. Not to my recollection, no. Not prior to that date.
>
> Q. Were you aware that she suffered from any form of disability prior to March 31, 2011, when she was formally advised that she was denied tenure?
>
>    ...
>
> A. Disability, no."

Schrage deposition, pp. 58-59.

**DISCUSSION**

I. <u>Standard for Motion for Summary Judgment</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Once the movant has met this burden, the burden shifts to the nonmovant who must "come forward with evidence to allow a reasonable jury to find in his favor." *Lizardo v. Denny's, Inc.,* 270 F.3d 94, 101 (2d Cir.2001); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325-27 (1986). The court must draw all factual inferences, and view the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp.,* 477 U.S. at 322. However, a nonmovant benefits from such factual inferences "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007), quoting Fed.R.Civ.P. 56(c).

II. <u>Plaintiff has failed to establish a prima facie case of disability discrimination.</u>

The ADA prohibits discrimination against qualified individuals with a disability with respect to conditions of employment including hiring, advancement, discharge and compensation. *See* 42

U.S.C.A. § 12112(a) (1995). To state a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that (1) she is a handicapped person within the meaning of the ADA; (2) she is otherwise qualified to perform the duties of her former job; (3) adverse employment action was taken against her because of her handicap; and (4) her employer is subject to the anti-discrimination provisions of the ADA. *See Joyce v. Suffolk County*, 911 F.Supp. 92, 94 (E.D.N.Y. 1996) (citations omitted).

With respect to the third prong, at a minimum, "'an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability . . .[A]n employer cannot fire an employee *because of* a disability unless it knows of the disability.'" *Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996), quoting *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 932 (7th Cir.1995) (internal quotation marks omitted); *see also O'Keefe v. Niagara Mohawk Power Corp.*, 714 F.Supp. 622 (N.D.N.Y.1989)(employer unaware of plaintiff's disability did not discharge plaintiff *because of* disability).

Therefore, a plaintiff's ADA discrimination claim must be dismissed where defendant had no knowledge of plaintiff's disability. *See Thomsen v. Stantec*, Inc., 785 F.Supp.2d 20, 23 (W.D.N.Y. 2011) *aff'd*, 483 F.Appx 620 (2d Cir. 2012).

Here, there is no question that WICSD was not notified of plaintiff's TN prior to denying her tenure. Plaintiff never

notified the district that she was disabled because of TN. Although plaintiff argues that WICSD "regarded" her as disabled, the sole evidence she cites in support of this claim, comments made about her status as a single mother, fall "woefully short of a sufficient basis upon which a reasonable jury might conclude" that WICSD perceived plaintiff as disabled. *See Thomsen*, 785 F.Supp.2d at 23.

A.  Denial of Reasonable Accommodations because of a medical disability.

Plaintiff specifically contends that WICSD failed to provide her with reasonable accommodations for her TN, which include extending deadlines and classroom breaks. WICSD responds that there is no evidence that it was aware of plaintiff's disability at any time before the decision was made denying plaintiff tenure. Although plaintiff asserts that several witnesses are willing to testify that she suffers from a medical disability, which, although not diagnosed, "was discussed several times" prior to March 31, 2011, she submitted no affidavits, deposition testimony, or medical records to dispute WICSD's evidence that they had no notice of plaintiff's TN.

It is well settled that

> "[f]or a plaintiff who can perform a . . . position with a reasonable accommodation to establish a prima facie case of discrimination because of disability, she must show (1) that she is an individual who has a disability within the meaning of the ADA, (2) *that an employer covered by the statute had notice of her disability*, (3) that with reasonable accommodation, she could perform the essential functions of the position sought, and (4) that the employer has refused to make such accommodations."

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 216 (2d Cir. 2001) (emphasis added); *see also* Givens v. Monroe Cnty., No. 11-CV-6592, 2014 WL 4794641, at *3 (W.D.N.Y. Sept. 25, 2014).

Although plaintiff was hired in 2008 and her employment was terminated in April 2011, it is undisputed that she did not inform WICSD of her TN until after she was advised that she would not be recommended for tenure. Indeed, plaintiff herself was admittedly unaware that she suffered from TN, and she testified that WICSD was likewise unaware of her illness, even if symptoms had emerged in January 2011.

Accordingly, as WICSD did not know, or have reasonable cause to perceive, that plaintiff suffered from a disabling condition, WICSD's motion for summary judgment must be granted. *See Thomsen*, 785 F.Supp.2d at 23; *Graves v. Finch Prawn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006)(employee is responsible for making employer aware of disability and need for accommodation).

III.    Retaliation under the ADA.

This Court's conclusion that plaintiff failed to establish that WICSD had notice of her disability renders her retaliation claim untenable. Even assuming, *arguendo*, that WICSD "regarded" plaintiff as disabled and being "substantially limited in" her ability to work, there is no evidence that she was subjected to retaliation for requesting accommodations. It is undisputed that WICSD granted plaintiff's requests for classroom breaks and flexible morning work hours. Moreover, there is ample proof in the

record that plaintiff was placed on a teacher improvement plan and ultimately denied tenure for performance-related reasons, not as a pretext for discrimination because of a perceived disability. The temporal proximity between plaintiff's medical absences and her negative performance evaluations is insufficient to demonstrate that WICSD's legitimate, nondiscriminatory reason for its actions was pretextual. *See Thomsen*, 785 F.Supp.2d at 25.

## CONCLUSION

For the reasons set forth above, I find that plaintiff has failed to state a prima facie case of discrimination under the ADA. Accordingly, I grant defendant's motion for summary judgement dismissing the complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca
_____
Michael A. Telesca
United States District Judge

DATED: Rochester, New York
November 24, 2014